### CAVALLIOTIS v. SEVENTY-FIVE DRUMS OF CAUSTIC SODA et al.
### MEHAFFY v. SAME.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

Nos. 91, 92.

**Shipping ☞125—Schooner held to have proceeded on voyage with reasonable dispatch after delivery of goods.**

   A schooner to which the libelant delivered soda for shipment in January *held* to have sailed with reasonable dispatch, though it did not sail until March, and other steamers had been able to secure cargo and proceed on the same voyage during that period, where it was an auxiliary schooner, which was less desirable as a carrier than similar vessels, and it would have taken her from two to three weeks to load, if all her cargo had been loaded at one time, and sailing was also delayed by a strike.

Appeals from the District Court of the United States for the Southern District of New York.

Libel in admiralty by Michael N. Cavalliotis, trading as the Ægean Trading Company, against Seventy-Five Drums of Caustic Soda, etc., claimed by Alex. R. Mehaffy, as master of the schooner A. J. West, with cross-libel by Alex. R. Mehaffy, as master, etc., against Seventy-Five Drums of Caustic Soda, etc., claimed by said Cavalliotis. From a decree for the cross-libelant, the libelant appeals. Affirmed.

The following is the opinion of Augustus N. Hand, District Judge, in the court below:

   The libelant claims that he was informed by Harry K. Barr, who was soliciting freight for the schooner A. J. West, that she had already sailed, and upon this representation he took up the bills of lading and paid the freight, but, on learning that she had not sailed, stopped payment of the check. When the check was stopped, the Eagle Union Line, which were the ship's agents, wrote a letter, dated March 3d, in which they served notice on Cavalliotis that he had received the bills of lading fraudulently, and that it would be considered a criminal offense if the bills of lading were sold to a third party. Cavalliotis wrote a letter, dated March 4th, to Barr, returning the bills of lading, and stating that he had represented that the vessel was to sail within a few days after delivery of cargo, and also stating that just before the check was delivered he had represented that the vessel had already sailed. Barr, in a letter of March 4th (Libelant's Exhibit 6), takes pains to deny the first representation, and says nothing about the second one, to the effect that the vessel had already sailed. Barr, when called as a witness, positively denied that he had represented that the schooner had sailed, and I cannot think it possible that a man of his appearance on the stand would commit such a fraud, which could be immediately detected by inquiry at the custom house, if not by reading the shipping news in the newspapers. The fact that he

did not take pains to deny the charge in his letter of March 4th rather supports the honesty of his story; for if he had been willing to secure the check on a fraudulent representation which could have been so easily detected, he would certainly have been willing to deny by letter, as he did on the witness stand, that he ever made it.

The vessel had a hard time in obtaining her contracts for cargo, and the fact that Cavalliotis was willing to accept the bills of lading and sent his check in payment for them on the 1st of March is an indication that he at that time wished the cargo to go forward, and was not insisting upon any claims that he might have had for delay in loading. After the 1st of March the trouble that the vessel had from strikes among dockmasters prevented her from starting, and was, I think, a sufficient excuse for such delay as occurred. The fact that other steamers had been able to secure cargo and proceed on voyage to Greece, during the period that the A. J. West was loading, does not show that an auxiliary schooner could do the same thing. It took her about 60 days for the voyage, and she was consequently much less desirable as a carrier of merchandise than similar vessels. The testimony also shows that it would have taken her from 2 to 3 weeks to load, if all her cargo had been loaded at one time. The evidence before me shows that the ship completed the voyage with the cargo, which was carried forward under a stipulation between the parties that it should be without prejudice to their respective rights.

I hold that the cargo was lawfully shipped, that under the circumstances the vessel proceeded on her voyage within a reasonable time, and that the freight has been earned. Consequently the libel of Cavalliotis is dismissed, with costs, and a decree is granted for the cross-libelant for the amount of freight and interest.

Walter F. Welch, of New York City (Vincent P. Donihee, of Brooklyn, N. Y., of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (Vine H. Smith and W. H. Woolley, both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

PER CURIAM. Libelant claims that he took up the bills of lading and gave his check for the freight in respect of shipments of soda because he relied upon the false representation, made on or about March 1, 1919, by one Barr (the person soliciting freight for the schooner A. J. West), that the schooner had already sailed. In January, 1919, the soda shipped by libelant was on board the schooner, but she had been delayed in sailing. We find it unnecessary to consider the legal status of the transactions prior to March 1st, because we agree with the District Judge in his conclusion that there was no false or fraudulent representation, and that libelant should have permitted his check for the freight to be paid, instead of stopping payment thereof. The libel was filed on March 15, 1919, but under an arrangement made in court the schooner was permitted to sail and did sail on March 22, 1919, and in due course delivered the freight at its destination port in Greece.

In March, 1919, there was a harbor strike, and only after considerable effort and the payment of an exorbitant price for towage was the schooner able to get away. We hold, as did the District Court, that the schooner sailed with reasonable dispatch, and, as the essential facts are satisfactorily set forth in the opinion of the District Judge, further discussion by us is unnecessary.

Decree affirmed, with costs.